UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:03CV-32-H

CORRY BURKE, et al.                                                                        PLAINTIFF

v.

U-HAUL INTERNATIONAL, INC., et al.                                             DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Over the past few months both parties have raised numerous evidentiary issues which the Court has now had an opportunity to review and discuss with counsel. The Court and the parties have discussed most at some length. Therefore, further discussion is often unnecessary. The following is a summary of those issues and the Court's ruling.

I.

The lawsuit arises out of a motor vehicle accident that occurred in Kentucky on Interstate 65 on October 29, 2002. The Burkes were traveling that day from Indianapolis to West Palm Beach, Florida. Christopher Burke was driving the family's Ford Explorer Sport. The Burkes had decided to tow the family's other car, a 1999 Ford Contour, on a tow dolly rented from a U-Haul rental center in Indianapolis.

On October 28, 2002, Mr. Burke rented a 102" tow dolly, which a U-Haul employee hooked to the ball hitch on his Explorer. Initially, the trip to Florida was uneventful. That afternoon, however, while the Burkes were driving in the rain on I-65 South near Elizabethtown,

Christopher Burke experienced a sudden side-to-side, or fishtail, motion of the tow dolly and Contour as he headed into a slight left curve. Burke testified that as soon as he became aware of the swaying, he saw the Contour slide perpendicular to the family's Explorer. The right side of the Explorer immediately slammed into the guardrail and flipped over onto it. The guardrail penetrated the roof of the Explorer causing severe injury to Mrs. Burke's cervical spine. She is now a quadriplegic. Their son, Ryan, sustained lacerations to his face.

These events resulted in the present lawsuit which alleges claims of strict liability and negligence against U-Haul and co-Defendant, Ford Motor Company. The central theory of liability offered by the Burkes' expert witnesses is that this unfortunate accident was caused by (1) a U-Haul rental policy that permits an unsafe 1:1 weight ratio between towing vehicle and towed vehicle, in combination with (2) the narrow wheel base and high center of gravity of the Explorer which makes it unreasonably prone to rollovers. The expert witness report of Robert Anderson concludes that, "The tow dolly and Explorer combination with its unfavorable weight ratio was the cause of the accident. The combination did not allow reasonable levels of steering and braking." The Burkes' other expert, Larry Barone, likewise concluded that the "unacceptable mass ratio" combined with the high center of gravity of the Ford Explorer, "produced lateral and directional dynamic instability with relatively minor steer input, thereby producing fishtailing (oscillation) of the vehicle and tow dolly combination which became more intensified with minor steering inputs causing the Ford Explorer to become uncontrollable."

U-Haul's experts offer several contrary opinions. Expert Peter Broen concludes that the weight ratio of the Explorer/Contour vehicle combination was not only safe and well within the DOT guidelines and manufacturers' recommendations, but can be driven easily by an average

driver. Expert James Schultz opines that any "fishtailing" of the vehicle combination was not the result of a failure of defect in the equipment, but was the result of driver input.

II.

A. General

1. <u>Collateral Source Payments</u>: The parties shall not refer to collateral source payments.

2. <u>Damages</u>: Prove without reference to inflation, interest or taxes pursuant to *Paducah Area Public Library v. Terry*, Ky. App., 655 S.W.2d 19 (1983).

3. <u>Comparative Fault Instruction</u>: Defendants allege that Corry Burke must be assessed some comparative fault as a result of her alleged failure to wear a seat belt. The Court must determine that the proof supports such and inference. If so, such an instruction is appropriate at the conclusion of the proof.

4. <u>Punitive Damages</u>: The Court withholds judgment on the issue of punitive damages until the conclusion of testimony.

B. Substantive

1. <u>Accident Scene Statements</u>: Chris Burke's statement to Officer Heller is admissible.

2. <u>Ford Owner's Manual</u>: Plaintiffs have yet to demonstrate a method of admitting Ford Owner's Manual nor have they explained a suitable rationale for its relevance. Moreover, Plaintiffs have not persuaded the Court that U-Haul has any duty to comply with the Ford owner's manual.

3. <u>Other Similar Accidents</u>: Plaintiffs have raised the issue of whether or to what

extent they may use evidence of "other similar incidents." In Kentucky, evidence of similar product failures under similar conditions is relevant and admissible "to show the danger of the product and the cause of the accident", *Montgomery Elevator Co. v. McCullough*, 676 S.W.2d 776, 783 (Ky. 1984), or to show defendant had notice of the problem. *See, e.g., Bush v. Michelin Tire Corp.*, 963 F.Supp. 1436, 1451 (W.D. Ky. 1996). Both prior and subsequent substantially similar accidents may be introduced into evidence to show dangerousness and causation. *Id.* Accidents involving the 102" dolly occurring after the Burke accident may be admissible, so long as they are substantially similar.

Questions remain as to whether accidents involving the 96" tow dolly could constitute substantially similar accidents. Judge Whalin dealt with the issue only from the viewpoint of discovery. Given that the history of the 96" tow dolly was used in the design and implementation of the 102" model involved in the present accident, substantially similar accidents involving the 96" model may be admissible to show that U-Haul had notice of a problem.

Before deciding the admissibility of any of this evidence the Court would need to know precisely how and in what form it will be presented and by whom. Also, the Court would need to know precisely the purpose for which admission is sought. Prior to the commencement of trial, Plaintiffs shall file a description of each substantially similar accident upon which they intend to rely.

4. <u>Participants in Other Accidents</u>: Irrespective of the Courts conclusions above, Plaintiffs will not be allowed to call as witnesses persons who were involved in

other allegedly similar accidents for the purposes of describing those accidents. These witnesses do not have expert knowledge of the actual causes of their own accidents, their testimony would therefore be unfairly prejudicial to Defendant and would require Defendant to bring forth other witnesses or eye witnesses to contradict that testimony. Such testimony would take considerable time and effort and has minimal relevance to the cause of the accident in the instant case.

5. <u>Impact Report</u>: Inadmissible. The November 15, 2000, impact report constitutes hearsay and is irrelevant to the issues in this case.

6. <u>U-Haul Policy re Explorers</u>: Inadmissible. Over a year after the Burke accident, U-Haul management implemented a policy to stop renting towable equipment behind Ford Explorers. Plaintiffs wish to introduce this as evidence that U-Haul had knowledge that the Ford vehicle was dangerous for towing. As such, they would be using the evidence to show Defendant's negligence in renting Explorers or that the Explorer had a defect. Subsequent remedial measures are not admissible to prove negligence, culpable conduct, a defect in a product, or a need for a warning. Fed. R. Evid. 407. Therefore, evidence of U-Haul's 2004 policy regarding Explorers is inadmissible. Moreover, Defendants contend that the policy was enacted for financial reasons, which, if true, would tend to make such evidence irrelevant.

7. <u>Dolly Rental Policies</u>: Admissible. Defendant has moved to prohibit reference to the dolly rental policies of other companies besides U-Haul. Mr. Broen can testify regarding this information if he used it and relief upon it in his report or

        testimony. It tends to show the standard in the industry. Of course, he can be cross-examined about his knowledge and about the reasons for such a rule.

8. <u>96" Dolly Test Reports</u>: Such reports will be admissible to show notice of a problem with the dolly if the tests concern accident conditions that are substantially similar to those faced by Burke. Prior to the commencement of trial, Plaintiffs shall file a description of each of these tests upon which they intend to rely.

9. <u>Pre-Existing Damage</u>: Inadmissible. Defendant has moved to prohibit reference to an alleged prior accident of the tow dolly. Plaintiffs have one expert witness, Larry Barone, who has stated that the dolly showed signs of prior damage that may have contributed to Burke's accident. However, Barone also testified that metallurgical testing would be necessary to support such a theory. Since Barone was not a metallurgist and no such testing has been done, the expert's opinion is inadmissible because it is not supported by a sufficient basis in fact. *See* Fed. R. Evid. 703.

10. <u>Speeds Over 45 mph</u>: Neither party is precluded from arguing about whether the speed of the vehicle contributed to the accident or whether there were adequate warnings. Plaintiff agrees not to claim that U-Haul was negligent by renting to someone knowing they would travel in excess of 45 mph, unless Defendants argue that they warned Burke not to exceed 45 mph.

C.  Expert Testimony

1. <u>Disclosure of Expert Opinions Required</u>:  As a general rule, experts will be allowed to testify concerning information, reports and observations contained in their Rule 26 disclosure or specifically referenced in their depositions.  Any other supporting materials or additional conclusions are presumptively inadmissible.

2. <u>Hair Evidence</u>: Defendants' expert, Tyler Kress, may refer to the hair found on the windshield wiper arm.

3. <u>Expert opinion re tow dolly coupler</u>:  Inadmissible.  Testimony involves hearsay and was not previously relied upon by expert.

4. <u>Inoperative Anti-Lock Brakes</u>:  With respect to Robert Anderson's testing of the automobile and dolly with inoperative anti-lock brakes, the Court will place no limitation on cross-examination at this time.

5. <u>Opinion re Brake Design</u>:  Defendant has moved to prohibit reference to the lack of brakes on the tow dolly as constituting a design defect making the dolly dangerous.  If Plaintiffs introduce testimony or evidence that Burke applied the brakes during the accident, evidence concerning the lack of brakes on the dolly will be relevant.  However, whether or not expert opinion testimony concerning the lack of brakes will be admissible hinges upon whether there is adequate factual basis for such testimony.  The Court would need to know on what scientific support (i.e., tests) Plaintiff's expert(s) will base their testimony.  *See* Fed. R. Evid. 703.  At this time, it appears the only evidence of such tests comes from U-Haul management employee John Ambromovage, who said that braking

tests had been performed on prior models of U-Haul dollies and proved to be ineffective. This certainly does not support a conclusion that the lack of brakes on the dolly had any effect on this accident.

6. <u>Ford Liability</u>: Mr. Anderson may be cross-examined regarding the opinions expressed in his Rule 26 report and in his deposition concerning the liability of Ford.

7. <u>Renfro Reports and New Vehicle Tests</u>: Inadmissible. Robert Anderson may not refer to Renfro's new vehicle tests conducted on August 1, 2006. Opinions concerning the tests were not included in Anderson's Rule 26 disclosure. Plaintiffs have agreed not to introduce reports or opinions by David Renfro.

8. <u>Trailer Standard (1966)</u>: Defendants' expert, Jim Fait, will be allowed to refer to the 1966 trailer standard. Of course, he may be cross-examined as applicability of the standard to tow dollies.

9. <u>SAEJ 2664 Standard</u>: Jim Fait may refer to a common practice of persons in 20029 but may not refer to the fact that a guideline was subsequently adopted in 2006. The experts may refer to the fact that a particular standard was used in the towing industry but may not refer to its subsequent adoption by a society or other professional group.

10. <u>Barone's Involvement in Dolly Limitation</u>: Defendants move to preclude Plaintiff's expert Barone from testifying that he was instrumental in creating the original limitation by U-Haul International on pulling tow dollies with small passenger cars and SUVs weighing less than 3000 pounds. Defendants dispute

8

        this contention, but that does not make it inadmissible. They will be able to adequately cross-examine Barone on this issue. Defendants' motion is denied.

11. <u>One-Size-Fits-All Coupler</u>: Inadmissible. Plaintiffs have not established a sufficient factual basis upon which to base opinion testimony by Barone that the design of the coupler contributed to the Burke accident. *See* Fed. R. Evid. 703. The only evidence in support of such a theory is a photograph showing the front view of the dolly. They have pointed to no expert reports, depositions or affidavits in support of the proposition.

12. <u>Dr. Edward Workman</u>: The issue surrounding Dr. Workman should have been resolved if he has been given the opportunity to examine Mrs. Burke. Plaintiffs are not precluded from cross-examining Dr. Workman.

The Court will review these rulings and discuss further issues at the next conference. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Court will treat evidence at trial in accordance with this Memorandum Opinion.

cc:    Counsel of Record