UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:03CV-32-H

CORRY BURKE, et al.                                                                                  PLAINTIFFS

v.

U-HAUL INTERNATIONAL, INC., et al.                                                    DEFENDANTS

**MEMORANDUM OPINION**

After a two-week trial, a jury found Defendants U-Haul International, Inc., U-Haul Co. of Indiana, and U-Haul Co. of Texas (collectively, "U-Haul") liable for injuries sustained by Plaintiffs when their vehicle overturned while towing a U-Haul dolly and awarded damages in an amount of $10,500,000.[1]  U-Haul now moves pursuant to Fed. R. Civ. P. 50(b) and 59 for a renewed judgment as a matter of law or, alternatively, a new trial.

In cases invoking diversity of citizenship jurisdiction, the Court applies the state law's substantive standard for determining when judgment as a matter of law is appropriate.  *Greene v. B.F. Goodrich Avionics Sys., Inc.*, 409 F.3d 784, 788 (6th Cir. 2005).  Under Kentucky law, judgment as a matter of law should be granted only when "there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable minds could differ." *Id.* (citing *Washington v. Goodman*, 830 S.W.2d 398, 400 (Ky. Ct. App.

---

[1] The jury found U-Haul liable under both the products liability and negligence instructions and awarded damages of approximately $11,600,000 on each, with 10% comparative negligence attributable to Plaintiff.  The total amount of the damages is not surprising.  Plaintiffs do not contend that they are excessive.

1992)). "[E]very favorable inference which may reasonably be drawn from the evidence should be accorded the party against whom the motion is made." *Id.* (citing *Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122, 125 (Ky. 1991)).

Defendants argue that Plaintiffs failed to prove essential elements of their claims and that the evidence presented at trial does not support the jury's verdict. Though none of them are new, Defendants have raised some legitimate concerns. Most every one of these issues was thoroughly argued and considered during the trial. Often times either this Judge or the Magistrate Judge issued written orders to summarize oral rulings. After reviewing the record and memoranda, hearing oral argument and reconsidering each issue, the Court finds that those decisions were generally sound. Therefore, the Court finds no reason to overturn the jury's verdict or to order a new trial.

I.

Defendants argue that Plaintiffs' case is fatally flawed because there was no evidence of any feasible alternative design, which is necessary to establish a breach of a manufacturer's or seller's duty as to the design of a product. In the typical design defect claim Kentucky law requires proof of a feasible alternative design. *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 42 (Ky. 2004). Plaintiffs did not show an alternative design in the usual manner. But, this is not fatal to this case.

Plaintiffs viewed the tow dolly as a unique product in that its use is dependent upon the vehicles with which it is paired. Under this theory, the tow dolly design cannot be viewed in isolation. U-Haul determines the vehicle combinations to which it will rent its dollies. An unsafe determination as to the vehicle combination could have the same disastrous consequences

as an unsafe design of the dolly's wheel base length, tongue weight, or some other more traditional element of its design. Alternative design then, is to market and rent the dolly only for use in a 2:1 weight ratio. The Court finds that Plaintiffs have met the requirement of showing a feasible alternative to allowing the tow dolly to be used in a 1:1 ratio.

Plaintiffs presented evidence that U-Haul should have utilized an alternative mass ratio in pairing dollies with towing vehicles. Plaintiffs' experts Larry Barone and Robert Anderson both testified that a 2:1 weight ratio between the towing vehicle and towed vehicle was safer than the 1:1 weight ratio of the vehicle combination used by the Burke family. In speaking about the tests he had performed on different vehicle weight ratio combinations, Anderson said that "the 1:1 would go out of control and the 2:1 did not." (Anderson Test. Trial Tr. 14, January 31, 2007.) He also stated that in his opinion "a 1:1 weight ratio is unsafe and that you really need a 2:1 ratio, and that the light utility vehicles are not good tow vehicles." (Anderson Test. Trial Tr. 41, Jan. 31, 2007.) Though Barone was hardly the most convincing witness on some issues, he did say that with 1:1 weight ratios there are "controllability problems with some vehicles." (Barone Test. Trial Tr. vol. 1, 24, Jan. 30, 2007.) Moreover, according to Barone, U-Haul had required a 2:1 ratio and had a prohibition against SUVs and light utility vehicles prior to 1983, when he left the company. (Barone Test. Trial Tr. vol. 1, 27, Jan. 30, 2007.)

It is undisputed that Defendants could have easily required a 2:1 weight ratio for its rental dollies and load. This meets the requirement of proof under Kentucky law.

## II.

Defendants next argue that the verdict should be overturned because Plaintiffs presented no evidence as to the cause of the sway. Plaintiffs produced evidence of a sway, but no evidence

as to what initiated that sway. Their expert witness Anderson testified that he had not determined and believed that no one had determined the cause of the sway. (Anderson Test. Trial Tr. 37, 96-97, Jan. 31, 2007.) However, the relevant test for causation in a Kentucky design defect case is the substantial factor test: was Defendants' conduct a substantial factor in bringing about Plaintiffs' harm? *Estate of Bigham v. DaimlerChrysler Corp.*, 462 F.Supp.2d 766, 771-72 (E.D. Ky. 2006) (applying Kentucky law and quoting *Morales v. Am. Honda Motor Co.*, 71 F.3d 531, 537 (6th Cir. 1995)). During trial, the Court stated many times that Plaintiffs need not present evidence as to what caused the sway. Rather, they needed to present evidence that the design defect, *i.e.*, the weight-ratio of the combination, was the proximate cause of the accident. They did so.

Plaintiffs presented evidence that the weight ratio between the towing and towed vehicles was a substantial factor in bringing about the accident. Plaintiffs' expert Anderson testified that with a weight ratio below 2:1, the tow dolly combination tends to go out of control when sway occurs. In discussing the tests he performed on vehicle combinations, he stated that "the 1:1 would go out of control and the 2:1 did not" and that as to the lesser weight ratio, "the weight of the tow vehicle is not sufficient to react." (Anderson Test. Trial Tr. 14, 37, Jan. 31, 2007.) An eye witness to the accident, Ronald Still, testified that "[t]he trailer started to weave first." (Still Test. Trial Tr. 5, Jan. 30, 2007.) Another eye witness, Robert Griesel, testified that the combination "fishtailed" and that "the trailer went from one side to the other. It was real fast, almost like -- just like a snapping motion, I guess. It went from one side to the other side really super quick." (Griesel Test. Trial Tr. 8, Jan. 29, 2007.)

In support of their argument that Plaintiff must present evidence as to the cause of the

4

sway to prevail on a design defect claim, Defendants point to three cases. Respectfully, the Court concludes that none of the three is dispositive here. First, Defendants point to *Brock v. Caterpillar, Inc.*, 94 F.3d 220 (6th Cir. 1996), in which the Sixth Circuit reversed a jury verdict in favor of plaintiff for injuries sustained when a bulldozer's brakes malfunctioned. The *Brock* court noted that the plaintiff's expert could not identify the cause of the loss of hydraulic pressure to the brakes of the bulldozer that led to the accident, nor could he attribute the loss of hydraulics to the design of the bulldozer. *Id.* at 226. Similarly, in *Gray v. General Motors Corp.*, 312 F.3d 240, 242 (6th Cir. 2002), the Sixth Circuit affirmed the decision of the district court granting judgment as a matter of law, because "the plaintiff's expert was unable to identify any 'probable' defect in the seatbelt mechanism that caused the injury, as is required by Kentucky products liability law." *Id.* (citing *Hersch v. United States*, 719 F.2d 873, 878 (6th Cir. 1983)). In *Briner v. General Motors Corp.*, 461 S.W.2d 99 (Ky. 1970), the court held that the evidence was insufficient to establish a reasonable probability that the car accident was caused by a mechanical defect for which the Defendant was responsible. *Id.* at 102. There had been "no direct proof of the existence of a defective mechanical condition existing at the time of the accident which could have caused it." 461 S.W.2d at 101.

Unlike the plaintiffs in *Brock*, *Gray*, and *Briner*, however, Plaintiffs here did provide evidence that the defect, the 1:1 weight-ratio caused the inability to control, leading to the accident. Therefore, a reasonable jury could conclude, based on the testimony of expert and lay witnesses, that the weight ratio of the towing combination was a substantial factor in causing the accident and resulting harm.

III.

Defendants next argue that the jury was improperly given an instruction as to a manufacturing defect where no evidence could support such a verdict. Jury Instruction No. 2 stated as follows:

> You will find for the Plaintiffs, Corry Burke and Chris Burke, individually and as Next Friend of Ryan Burke, a minor, if you are satisfied from the evidence that:
> (1) The tow dolly, as designed, manufactured, or distributed by the U-Haul Defendants, is defective and unreasonably dangerous; and
> (2) The design, manufacture, or distribution of the tow dolly was a substantial factor in causing the accident and injuries to the Plaintiffs.

The phrase at issue is paragraph (2), which asks whether "[t]he design, *manufacture*, or distribution" of the tow dolly caused the accident. (Jury Instr. 4, Feb. 12, 2007) (emphasis added). Defendants argue that due to the absence of evidence, it was error to submit a manufacturing defect instruction to the jury.[2]

---

[2] The instruction is not an explicit defect instruction. Defendants tendered such an instruction for "Strict Products Liability for Manufacturing Defect" in their Proposed Jury Instructions, which the Court did not submit to the jury:

> In this case, Plaintiffs claim that the design of the tow dolly was manufactured for Defendant U-Haul Co. of Texas and designed by Defendant U-Haul International, was manufactured defectively.
> A manufacturer is liable for manufacturing defects or deviations from a product's design that create unreasonable risks of harm. A product contains a "manufacturing defect" when the product departs from its intended design, even though all possible care was exercised in the preparation and marketing of the product.
> In order for Plaintiffs to recover against U-Haul Co. of Texas and/or U-Haul International for the alleged manufacturing defect in the tow dolly, you must be satisfied from the evidence that:
> (1) The tow dolly, at the time it was manufactured by U-Haul Co. of Texas, departed from its intended design, even though all possible care was exercised in the preparation and marketing of the tow dolly, and
> (2) The manufacturing defect was a substantial factor in causing the accident and injury to Plaintiffs.
> Otherwise, you will find for Defendants U-Haul Co. of Texas and U-Haul

6

Jury instructions must "adequately inform the jury of the relevant considerations and provide the jury with a sound basis in law with which to reach a conclusion." *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 787 (6th Cir. 2003) (citing *United States v. Wells*, 211 F.3d 988, 1002 (6th Cir. 2000). A jury verdict will be reversed on account of improper jury instructions "only if the instructions, when viewed as a whole, were confusing, misleading and prejudicial." *Id.*

Plaintiffs' products liability theory of the case has always been a unique one based upon its circumstances. They have essentially argued that the design of the tow dolly encompasses the pairing of the tow dolly with vehicle combinations, because it cannot be used without such vehicles. Defendants correctly point out that Plaintiffs presented no evidence at trial that any defect in the manufacture of the tow dolly. However, in this case, the inclusion of the manufacturing instruction does not render the instructions confusing, misleading, or prejudicial.

Kentucky has adopted Restatement (Second) of Torts § 402A. *Greene v. B.F. Goodrich Avionics Systems, Inc.*, 409 F.3d 784, 788-89 (6th Cir. 2005) (citing *Dealers Transport Co. v. Battery Distrib. Co.*, 402 S.W.2d 441, 446-47 (Ky. Ct. App. 1965)). Under § 402A, a manufacturer may be held strictly liable if the plaintiff proves the product was "in a defective condition unreasonably dangerous to the user or consumer." *Id.* (quoting *Montgomery Elevator Co. v. McCullough by McCullough*, 676 S.W.2d 776, 780 (Ky. 1984)). "Defective" means "that the product does not meet the reasonable expectations of the ordinary consumer as to its safety." *Id.* (quoting *Worldwide Equip., Inc. v. Mullins*, 11 S.W.3d 50, 55 (Ky. App. 1999)). The Court's instruction correctly reflects these holdings.

---

International on this issue...
Defendants do not argue that such instruction should have been submitted to the jury.

True, the instruction provides a manufacturing defect instruction where no evidence of such was presented. But as used here, the instruction is neither misleading nor prejudicial. The instruction is not confusing because it clearly asks whether the product was unreasonably dangerous and whether the design, manufacture, or distribution of the product was a substantial factor in causing the injuries. There is no reason to believe that the jury based its verdict upon the finding of a manufacturing defect, where no such evidence was presented. The entire case and argument focused upon the weight ratio of the vehicle combination and its relationship to sway or the control of sway. In further support of this conclusion, the Court notes that the jury also found liability under the negligence standard for design and distribution of the product. The negligence instruction did not mention manufacturing.[3] Defendants' argument is premised upon a completely illogical characterization of the jury's verdict. The Court cannot accept such a characterization.

## IV.

Defendants again challenge the Court's decisions as to the expert witnesses who were permitted to testify at trial. First, U-Haul objects to the Court's refusal to permit Donald Tandy to testify. Tandy had been retained by Ford to testify as an expert witness as to the stability of the Explorer. After Ford settled out of the case, Defendants sought to introduce him as a lay witness, including him as the last name on a November 13, 2006 lay witness list. However, the Court recognized that any relevant testimony by Tandy would have been based on testing he conducted while employed by Ford in preparation for litigation, thus making it expert rather than lay testimony. After discussing the issue with the parties at a Pretrial Conference on November

---

[3] Thus, even if the products liability were negated, the identical negligence verdict would stand.

20, 2006, the Court declined to permit Tandy to testify as a lay witness.

The Court also refused to permit Defendants from bringing Tandy as an expert witness. U-Haul had neglected to identify him as an expert in any Rule 26 disclosure statement, which had been due six months earlier, on May 8, 2006. "A party that without substantial justification fails to disclose information required by Rule 26(a) . . . shall not, unless such failure is harmless, be permitted to use as evidence . . . on a motion any witness . . . not so disclosed." Fed. R. Civ. P. 37(c)(1). Defendants for the first time point out that the 1993 Amendments advisory committee notes suggest that "the failure to list as a trial witness a person so listed by another party" may be harmless, making exclusion unnecessary. Fed. R. Civ. P. 37(c) advisory committee note.

In this case, the Defendants failed to provide substantial justification for the delay, which would have required an additional deposition in the face of an impending trial. "District courts have broad discretion to exclude untimely disclosed expert-witness testimony." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000). The Court's decision to exclude Tandy as a witness was fair, reasonable and well within its discretion. Moreover, Defendants were not unduly prejudiced by his absence, and any error in excluding him would be harmless. The focus of Tandy's tests appear to be on the stability of the Explorer as a tow vehicle. The purpose of his tests were to "document the performance capacity [of] this Explorer with the tow dolly and a Contour," and his conclusions focus on the handling and stability characteristics of the Ford Explorer two door 4x2. None of Defendants' witnesses relied on his tests. Moreover, Defendant had other witnesses, Broen, Schultz, and Fait, who testified as to Defendants position on Anderson's testing and the stability of the towing combination. The issue was amply discussed

9

before trial, including most recently in the Court's January 26, 2007, Memorandum and Order.

The U-Haul Defendants also attempt to reassert their arguments that Plaintiffs' experts Barone and Anderson should have been excluded. The issue was discussed at length. The Court found both qualified to testify in an October 24, 2006, Memorandum Opinion and Order. That the Court found at least one of these witnesses to be extremely non-responsive, vague and unpersuasive on cross-examination does not mean that the witness was unqualified to testify. U-Haul's criticisms of the experts, including the reliability of Anderson's testing methodology, go to the weight of the evidence rather than admissibility, and counsel for U-Haul vigorously and effectively cross-examined both.

V.

The U-Haul Defendants argue that Plaintiff's counsel made improper remarks during closing arguments that had a prejudicial influence upon the jury. They point to four particular statements.

Plaintiff's counsel stated that "every witness clearly shows that this was an oscillation that was induced by the trailer, by the tow dolly; that U-Haul knew that this was an unreasonably dangerous rental combination." Defendants argue that such statement was factually inaccurate and unfairly prejudicial because no one actually identified the cause of the sway. However, several lay witnesses did say that the tow dolly began swaying before the tow vehicle. So, the argument is not necessarily inaccurate. Plaintiffs were arguing that the accident was substantially caused by the sway of the dolly, rather than a steering input or other third factor, and such an argument was permissible.

Plaintiffs' counsel read the testimony of Nicholas McIntosh, an eyewitness at the scene

who was not called to testify at trial and who's deposition testimony had not been admitted into evidence. Portions of McIntosh's deposition had been read without objection during cross examination of James Schultz. Plaintiffs' counsel referred to the fact that Mr. Schultz had reviewed the deposition of the witness and quoted from portions of his testimony. Using such statements during closing argument was not unfairly prejudicial.

Defendants argue that Plaintiffs' counsel erroneously stated that Mr. Barone had designed the tow dolly. However, shortly thereafter he stated that Barone designed "what's known as the rigid tow dolly." (Trial Tr. Closing Arguments, 7-8.) Viewing his statements as a whole, they are not unfairly prejudicial.

Defendants also argue that Plaintiffs' counsel improperly implied that the U-Haul Defendants purposefully disposed of its testing files for the 1982 model of the 96" tow dolly, despite the Court's ruling that counsel was prohibited from drawing inferences from the failure to locate such file. The Court finds that counsel's statement that the file was not available was factually correct and did not create an improper inference that there had been any purposeful behavior on the part of U-Haul.

VI.

The Court faced many difficult issues throughout this litigation. Virtually without exception, all contested matters were resolved only after considerable debate, discussion and thought. Superb lawyers represented each side. They did not disappoint: handling difficult circumstances each with great skill.

Despite some of Defendants' arguments to the contrary, the two-week trial was fundamentally fair. Although they now raise a number of close issues that appear to have been

resolved against them, Defendants ignore the many favorable rulings it received. The Court acted as gatekeeper for the trial, excluding evidence about other "similar" incidents and prior damage to the tow dolly that would have been unduly prejudicial to the Defendants. It also granted Defendant's motion to exclude evidence of Dr. David Renfroe's testing that would have been used bolster Anderson's test methodology, because such evidence was presented after the close of discovery. Over Plaintiffs' objection, it permitted testimony by Trooper Jamie Heller as to his conversation with Chris Burke following the accident as well as testimony of two of U-Haul's experts who had driven through the accident scene using a similar vehicle combination. The Court carefully considered the jury instructions, rejecting Plaintiff's proposed duty to warn instruction because no warning by U-Haul, other than refusing to rent to the Burkes, could have been effective. It also permitted an apportionment instruction against Chris Burke as driver. Finally, the Court, in its discretion, sustained U-Haul's motion for a directed verdict on the issue of punitive damages. Viewed as a whole, the Court was evenhanded in overseeing the case, the Defendants had ample opportunity to defend, and the trial was fair. Ultimately, Plaintiffs provided enough evidence from which a reasonable jury could (and in fact did) conclude that the product as placed into commerce by Defendants was a substantial factor in bringing about Plaintiffs' injuries.

  Most of the testimony in this case was hotly disputed and vigorously argued. The Court believes that a jury could find from the evidence that to allow a 1:1 weight ratio between the towing vehicle and the dolly/towed vehicle was unreasonably dangerous. The jury could conclude that U-Haul changed its prohibition of the 1:1 ratio without sufficient testing. Plaintiffs' case was helped by the inherent simplicity of it: that a heavier towing vehicle can

12

better control a lighter load than a heavier load.  The jury agreed with this rather straightforward concept and faulted U-Haul for allowing the use of the dolly under these circumstances.

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record